UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| WHALECO INC.,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY GLUCK; GLUCK LAW FIRM P.C.;<br>ALEC MONOPOLY ART, LLC; ALEC<br>MONOPOLY, LLC; and COOKIES SF LLC,<br><br>    Defendants. | Case No. 25-cv-11233 |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS ALEC MONOPOLY ART, LLC**
**AND ALEC MONOPOLY, LLC'S**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

I.  Legal standard .................................................................................................- 4 -

II.  Temu's misrepresentation claims against Alec Monopoly fail as a matter of law. ............- 4 -

    A.  Temu alleges no facts suggesting an intentional misrepresentation, fraudulent inducement, or negligent misrepresentation by Alec Monopoly. ...........................................- 5 -

    B.  Alec Monopoly is not vicariously liable for any alleged misrepresentations by Gluck. - 7 -

    C.  Temu's tort claims are duplicative of its breach of contract claims. .............................- 9 -

    D.  Temu's negligence claim is barred by the economic loss doctrine. ............................- 11 -

III.  Temu fails to allege that Alec Monopoly breached the settlement agreement. .................- 11 -

    A.  Temu has not alleged the Alec Monopoly breached any of its obligations under the settlement agreement. ..........................................................................................- 12 -

    B.  Temu alleges no breach of the implied covenant of good faith and fair dealing by Alec Monopoly and the Court should dismiss Count Four as duplicative. ...................................- 15 -

    C.  Alec Monopoly is not vicariously liable for breach of the settlement agreement. ........- 16 -

    D.  Rescission of the settlement agreement is not an available remedy. ............................- 17 -

IV.  Temu cannot state a claim for unjust enrichment. ...........................................................- 18 -

V.  Alec Monopoly is entitled to an award of attorneys' fees and costs. ...............................- 19 -

## TABLE OF AUTHORITIES

**Cases**

*Apex Maritime Co. v. OHM Enterprises, Inc.*, No. 10 Civ. 8119(SAS), 2011 WL 1226377 (S.D.N.Y. Mar. 31, 2011) ................................................................................................- 5 -

*Arena Investors, L.P. v. DCK Worldwide Holding Inc.*, 189 N.Y.S.3d 117 (2023) ...... - 14 -, - 15 -

*Aretakis v. Caesars Entertainment*, No. 16 Civ. 8751 (KPF), 2018 WL 1069450 (S.D.N.Y. Feb. 23, 2018) ................................................................................................ - 10 -, - 11 -

*ARS Kabirwala, LP v. El Paso Kabirwala Caymon Co.*, No. 16-cv-6430-GHW, 2017 WL 3396422 (S.D.N.Y. Aug. 8, 2017) ...................................................................... - 15 -, - 16 -

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................- 4 -

*Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355 (E.D.N.Y. 2013) ......................................................................................................................- 9 -

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-cv-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) .............................................................................. - 9 -, - 18 -

*Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42 (2d Cir. 2012) ......................................................................................................................- 9 -

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................- 4 -

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486 (S.D.N.Y. 2013)........- 11 -

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996)..........- 10 -

*Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177 (N.Y. 2012)..................................................- 19 -

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) ..................................- 5 -

*Del Rosario v. Sazerac Co.*, No. 23-cv-1060 (AS), 2023 WL 6318083 (S.D.N.Y. Sept. 28, 2023)- 19 -

*Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84 (2d Cir. 2013) ............- 15 -

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007) ...................................................................- 10 -

*Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980) ....................................................- 9 -

*In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631 (S.D.N.Y. Mar. 28, 2018) ...- 16 -

*John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F. Supp. 2d 527 (S.D.N.Y. 2001) - 16 -

*Jordan v. Verizon Corp.*, No. 08-cv-6414, 2008 WL 5209989 (S.D.N.Y. Dec. 10, 2008) ......- 16 -

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-cv-9116, 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) ....................................................................................................................- 15 -

*Klauber Bros., Inc. v. Russell-Newman, Inc.*, No. 11 Civ. 4985(PGG), 2013 WL 1245456 (S.D.N.Y. Mar. 26, 2013) ....................................................- 7 -, - 12 -, - 14 -, - 16 -

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195 (2d Cir. 2005) ..........- 8 -

*Lemus v. Manhattan Car Wash, Inc.*, No. 06 Civ. 15486(MHD), 2010 WL 1372705 (S.D.N.Y. Mar. 26, 2010)...........................................................................................................- 12 -

*Lomaglio Assocs. Inc. v. LBK Marketing Corp.*, 876 F. Supp. 41 (S.D.N.Y. 1995) .................- 5 -

*M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134 (2d Cir. 1996) ..................................................- 15 -

*Mina Investment Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355 (S.D.N.Y. 1998)................- 18 -

*Mulder v. Kohl's Department Stores, Inc.*, 865 F.3d 17, (1st Cir. 2017) ...................................- 4 -

*N. Am. Photon Infotech, Ltd. v. DiscoverOrg, LLC*, No. 20-cv-2180 (JSR), 2020 WL 3051059 (S.D.N.Y. June 8, 2020)...........................................................................- 9 -, - 10 -

*New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 329 (S.D.N.Y. 2000) .........................................................................................................- 17 -, - 18 -

*NYKcool A.B. v. Pac. Fruit Inc.*, No. 10 Civ. 3867(LAK)(AJP), 2010 WL 4812975 (S.D.N.Y. Nov. 24, 2010) ...................................................................................................- 12 -

*Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89 (2d Cir. 2012)..............................................- 8 -

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ...........................................................- 12 -

*Rubin v. Whitney*, 295 N.Y.S. 255 (Sup. Ct. 1937) .................................................................- 17 -

*Telecom Int'l Am. Ltd. v. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001) .......................................- 9 -

*Tobin v. Gluck*, 137 F. Supp. 3d 278, 292 (E.D.N.Y. 2015)............................................- 12 -, - 14 -

*Travelers Cas. & Sur. Co. v. Dormitory Auth. – State of N.Y.*, 734 F. Supp. 2d 368 (S.D.N.Y. 2010) .........................................................................................................................- 11 -

*United States ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28 (1st Cir. 2013)...............- 4 -

*Van Brunt v. Rauschenberg*, 799 F. Supp. 1467 (S.D.N.Y. 1992) ...........................................- 18 -

*Vanderbilt Minerals, LLC v. Sub-Technical, Inc.*, No. 18-CV-105 (MAD/ML), 2019 WL 4964466 (N.D.N.Y. Oct. 8, 2019)........................................................................- 5 -

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................- 4 -

Plaintiff Whaleco Inc. ("Temu") is an online marketplace that sells a wide variety of goods across the globe. Street artist Alexander Andon, better known as Alec Monopoly,[1] learned that Temu was selling unlicensed products based on his designs. Alec Monopoly retained the Gluck Law Firm[2] to demand that Temu cease the theft of its designs. Temu and Alec Monopoly settled their dispute at mediation and without the need for litigation. Temu agreed to compensate Alec Monopoly for its losses in exchange for a release.

Temu apparently regrets that choice. It now seeks to unwind the deal and to force Alec Monopoly to return the proceeds of the settlement. Temu has found no basis to fault Alec Monopoly, which has fully lived up to its promises in the agreement. Instead, Temu speculates that Alec Monopoly's counsel misrepresented its intentions to advertise for other clients and to represent other clients against Temu. Alec Monopoly joins in Gluck's motion to dismiss, which is expressly incorporated here,[3] and agrees that Gluck did not violate the agreement. Indeed, Temu's argument against Gluck requires it to studiously ignore an important part of Gluck's representations in the settlement agreement, which clarifies that Gluck's "right to represent clients against TEMU" and to "market and advertise for additional clients" is not "restrict[ed], inhibit[ed], or limit[ed] in any way." Ex. 1 ¶ 2.4.[4]

But even if Temu did have a cause of action against Gluck (and it does not), Gluck's actions on behalf of itself and on behalf of other clients have nothing to do with Alec Monopoly. Temu's theory that Alec Monopoly is responsible for the acts of its counsel suffers from a fatal

---

[1] Mr Andon is the sole member of Defendants Alec Monopoly, LLC and Alec Monopoly Art, LLC (collectively "Alec Monopoly").

[2] This motion will refer to Jeffrey Gluck and the Gluck Law Firm collectively as "Gluck."

[3] Alec Monopoly also adopts and expressly incorporates the motion to dismiss of co-defendant Cookies SF LLC.

[4] "Ex. 1" refers to the settlement agreement between Temu and Alec Monopoly and attached as Exhibit 1 to the complaint.

flaw. Gluck's actions on behalf of other clients are not within the scope of its representation of Alec Monopoly. Alec Monopoly has no control over Gluck's advertising strategy or any lawsuits that the firm's other clients might choose to bring. Alec Monopoly could not even know if Gluck had other clients who intended to sue Temu, which would be attorney-client privileged information between Gluck and those clients. Temu's claims against Alec Monopoly should be dismissed in their entirety.

## BACKGROUND

Alec Monopoly retained Gluck in 2023 to protect its intellectual property, which had appeared in certain unauthorized products for sale on the Temu website.[5] Compl. ¶ 19. Alec Monopoly and Temu reached an agreement in principle in the fall of 2024. Compl. ¶ 20.[6] The parties agreed that New York law would govern any dispute concerning the settlement agreement. Compl. ¶ 20; Ex. 1 ¶ 9.

Gluck signed the settlement agreement "as to Paragraphs 2.4 and 2.5 only" on November 9, 2024. Compl. ¶ 22; Ex. 1 at 1. Paragraph 2.4 states: "Jeff Gluck and Gluck Law Firm P.C. ("Gluck) represent that they currently have no clients who intend to sue TEMU and have no present intention of advertising or marketing for additional clients. Notwithstanding the foregoing, and for the avoidance of doubt, nothing contained herein shall restrict, inhibit, or limit, in any way, Gluck's right to represent clients against TEMU, bring claims against TEMU,

---

[5] Alec Monopoly does not concede the truth of Temu's allegations, but describes them here for the purposes of this motion to dismiss.

[6] On June 13, 2025 the Court granted Temu's motion to seal the unredacted complaint and accompanying exhibits, but noted that it might reconsider sealing those materials should there be a change in circumstances. The parties have met and conferred and agree that most of the settlement agreement need not be sealed. In particular, none of the information in the motions to dismiss requires sealing and Alec Monopoly therefore requests that the Court accept the motions for filing on the public docket.

and market and advertise for additional clients." Ex. 1 ¶ 2.4  Paragraph 2.5 provides: "The Parties and Gluck acknowledge that this Agreement is being entered into based on assurances of the truth and accuracy of the representations contained herein, and that any material breach of the representations made herein would grant it the ability to pursue all available remedies." Ex. 1 ¶ 2.5.

Temu agreed to pay Alec Monopoly to settle the dispute "[i]n consideration for the release set forth below." Ex. 1 ¶ 2.6.  The "Parties," Temu and Alec Monopoly, both executed a mutual release. Ex. 1 ¶ 3.  Gluck did not execute the release. *See* Ex. 1 at 1 (defining "Parties" as Alec Monopoly Art, LLC and Temu).

Alec Monopoly and Gluck executed the agreement on November 9, 2024.  Compl. ¶ 22; Ex. 1 at 7.  Temu did not sign until December 3, 2024.  Ex. 1 at 7.

Temu does not allege that Alec Monopoly made any misrepresentations or that Alec Monopoly violated any of its obligations under the agreement.  Instead, Temu alleges that Gluck's representation in Paragraph 2.4 was false.  It claims that Gluck posted a solicitation for new clients that could be understood to reference Temu on November 12, 2024 – 3 days after Gluck signed Paragraph 2.4.  Compl. ¶¶ 27-29.  Temu also contends that Gluck notified it on January 24, 2025 that it had additional clients interested in filing suit.  Compl. ¶ 34.  That communication took place approximately two and a half months after Gluck signed the Alec Monopoly agreement and about a month and a half after Temu signed the agreement.  Compl. ¶ 28.  Temu infers that Gluck must have represented those other clients earlier because it had other business relationships with them.  Compl. ¶¶ 40-54.  Those business relationships include Gluck selling branded products through one, collaborating with one to design spray cans and

clothing, serving as a registered agent for one related entity, and following some of those

companies on Instagram.  Compl. ¶¶ 40-54.

## ARGUMENT

### I.     Legal standard

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must allege "enough facts to state

a claim for relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  There must be "more than a sheer possibility that a

defendant has acted unlawfully," *id.*, and a claim must be supported by facts sufficient to "raise a

right to relief above the speculative level," *Twombly*, 550 U.S. at 555.  In addition, because

Plaintiff grounds its claims in fraud, its claims must also satisfy the heightened pleadings

requirements of Rule 9(b).  *See Mulder v. Kohl's Department Stores, Inc.*, 865 F.3d 17, 21-22

(1st Cir. 2017).  To satisfy Rule 9(b), a pleading must "specifically plead 'the time, place, and

content of an alleged false representation.'"  *Id.* at 22 (quoting *United States ex rel. Heineman-*

*Guta v. Guidant Corp.*, 718 F.3d 28, 34 (1st Cir. 2013)).

### II.    Temu's misrepresentation claims against Alec Monopoly fail as a matter of law.

Temu contends that Gluck intentionally or negligently misrepresented that Gluck did not

have "clients who intend to sue TEMU" or that Gluck had "no present intention of advertising or

marketing for additional clients."  Compl. ¶¶ 59, 74.  Temu fails to allege with particularity that

Gluck made any false statements in the settlement agreement, as Gluck explains in its motion to

dismiss that is expressly incorporated in this memorandum.  Temu's claim against Alec

Monopoly also suffers from four additional fatal flaws.  First, Temu fails to identify any false

statements by Alec Monopoly.  Second, Alec Monopoly is not vicariously liable for Gluck's

statements that were made outside the course of the representation.  Third, under New York law Temu cannot maintain a tort claim that is duplicative of its contract claims.  Finally, Temu's negligence claim is barred under New York's economic loss doctrine.

       A.    <u>Temu alleges no facts suggesting an intentional misrepresentation, fraudulent inducement, or negligent misrepresentation by Alec Monopoly.</u>

To state a claim for intentional misrepresentation and fraudulent inducement, Temu must allege that "the defendant knowingly made a false statement of material fact with the intent to induce the plaintiff's reliance, and also that the plaintiff did in fact rely on that false statement to its detriment."  *Apex Maritime Co. v. OHM Enterprises, Inc.*, No. 10 Civ. 8119(SAS), 2011 WL 1226377, at *2 (S.D.N.Y. Mar. 31, 2011) (quoting *Lomaglio Assocs. Inc. v. LBK Marketing Corp.*, 876 F. Supp. 41, 44 (S.D.N.Y. 1995)).  The heightened pleading standards of Rule 9 apply to an intentional misrepresentation or fraudulent inducement claim.  *Apex Maritime*, 2011 WL 1226377, at *2.   To state a claim for negligent misrepresentation Temu must allege "'(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'"  *See Vanderbilt Minerals, LLC v. Sub-Technical, Inc.*, No. 18-CV-105 (MAD/ML), 2019 WL 4964466, at *7 (N.D.N.Y. Oct. 8, 2019) (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)).  Temu cannot state a direct claim against Alec Monopoly on Counts One or Two.  Temu has not alleged a misrepresentation by either Gluck or Alec Monopoly.  And Temu's assertion that it reasonably relied on Paragraph 2.4 of the agreement is implausible as a matter of law.

As an initial matter, as Gluck argues in its motion to dismiss, Temu has failed to allege that Gluck's representations, taken as a whole, were false.  Temu's complaint studiously ignores the last sentence of Paragraph 2.4, which states, "Notwithstanding the foregoing, and for the

avoidance of doubt, nothing contained herein shall restrict, inhibit, or limit, in any way, Gluck's right to represent clients against TEMU, bring claims against TEMU, and market and advertise for additional clients." Ex. 1 ¶ 2.4.  Gluck fully disclosed to each of the parties that it may continue to represent clients against Temu and may advertise for additional clients to sue Temu. And Temu does no more than speculate that Gluck intended to advertise for new clients or that it had other clients that presently intended to sue Temu when Gluck made the representation in Paragraph 2.4.

Gluck's alleged pursuit of additional clients and claims against Temu is entirely consistent with the parties' understanding when they executed the settlement agreement.  The parties acknowledged in Paragraph 2.5 that they entered into the contract based on the truth of the representations in the agreement. Ex. 1 ¶ 2.5.  Temu was willing to sign the agreement even when it was fully aware that Gluck could continue to bring suits against it and could advertise for clients.  Gluck relied on the assurance that it was free to sue Temu and advertise for additional clients.  And Alec Monopoly relied on the assurance that Gluck's representation of other clients would not interfere with the settlement because those representations were expressly permitted under the terms of the agreement.

Even if Gluck had misrepresented its intentions, Temu alleges no false statements by Alec Monopoly.  It is "Gluck's representations that neither he nor his firm had 'clients who intended to sue TEMU and [had] no present intention of advertising or marketing for additional clients" that Temu says were false.  Compl. ¶ 59.  It was "Gluck's representation about his own intentions and the intentions of his clients" that Temu allegedly relied on.  Compl. ¶ 68.  And it was Gluck that "was in the best position to know" its intentions.  Compl. ¶ 69.  The complaint

lacks even a conclusory allegation that Alec Monopoly made any false statements, never mind an allegation that would satisfy the exacting pleading standards of Rule 9.

Moreover, Temu does not allege (and cannot allege) that Alec Monopoly knew Gluck's representations in Paragraph 2.4 were false. Alec Monopoly could not possibly be privy to Gluck's privileged discussions with other clients. And Temu does not allege that Alec Monopoly had any knowledge of Gluck's planned advertisements. After all, the Instagram post that Temu complains of was published after Alec Monopoly had already executed the settlement agreement. Alec Monopoly signed the settlement on November 9, 2024, three days before Gluck's November 12, 2024 post. *Compare* Ex. 1 at 7 *with* Compl. ¶ 27.

Finally, Temu's assertion that it reasonably relied on any allegedly false representation by Gluck to its detriment is belied by the text of the agreement itself. Paragraph 2.4 makes clear that Gluck is permitted to continue to bring lawsuits against Temu and to advertise for clients interested in suing Temu. Temu cannot plausibly allege that it is harmed if one of Gluck's clients intended on November 9, 2024 to sue Temu but is not harmed if another client intended to sue Temu the very next day.

B.    <u>Alec Monopoly is not vicariously liable for any alleged misrepresentations by Gluck</u>.

Although a client is vicariously liable for acts its attorney takes in the scope of the representation, that principle is inapplicable here. Under the plain language of the contract Gluck did not make the alleged misrepresentation on behalf of Alec Monopoly. *See Klauber Bros., Inc. v. Russell-Newman, Inc.*, No. 11 Civ. 4985(PGG), 2013 WL 1245456, at *3 (S.D.N.Y. Mar. 26, 2013).

Gluck did not sign the settlement agreement on behalf of Alec Monopoly. The agreement was "entered into by and between" Alec Monopoly, Gluck "as to Paragraphs 2.4 and

2.5 only" and Temu.  Ex. 1 at 1.  And Gluck signed "as to Paragraphs 2.4 and 2.5 Only."  Compl. ¶ 22; Ex. 1 at 1.  The agreement is executed on behalf of Alec Monopoly Art, LLC by its sole member Alexander Andon.  The contract does not state that Gluck signed on behalf of Alec Monopoly.  To the contrary, the settlement agreement makes clear that Gluck's signature is limited to the representations in Paragraphs 2.4 and 2.5.

To read the contract otherwise would render superfluous the language specifying that Gluck is entering into the agreement "as to Paragraphs 2.4 and 2.5 only."  *See Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) ("Any interpretation of a contract that 'has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'") (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)).  If Gluck had signed the agreement in its capacity as Alec Monopoly's counsel, its signature would apply to the entire contract, not just two paragraphs of it.  Gluck did not sign Paragraphs 2.4 and 2.5 as Alec Monopoly's agent.

So too with regard to Paragraphs 2.4 and 2.5, which unambiguously state that the alleged misrepresentations are made by Gluck.  It is "Jeff Gluck and Gluck Law Firm P.C." that "represent that they currently have no clients who intend to sue TEMU and have no present intention of advertising or marketing for additional clients."  Ex. 1 ¶ 2.4.  Those statements are about Gluck's present intentions, not about Alec Monopoly's plans.  And both Gluck and Alec Monopoly individually acknowledge that the contract "is being entered into based on the assurance of the truth and accuracy of the representations contained herein."  Ex. 1 ¶ 2.5.

Because the alleged misrepresentations were not made on behalf of Alec Monopoly (either directly or through an agent), the misrepresentation claims fail as a matter of law.

C.    <u>Temu's tort claims are duplicative of its breach of contract claims.</u>

Temu and Alec Monopoly indisputably are parties to a settlement agreement.  Under New York law, "[w]hen a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts . . . are generally precluded." *N. Am. Photon Infotech, Ltd. v. DiscoverOrg, LLC*, No. 20-cv-2180 (JSR), 2020 WL 3051059, at *2 (S.D.N.Y. June 8, 2020) (quoting *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-cv-9687 (VEC), 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016)).  Where "a plaintiff is seeking merely to obtain the benefit of a contractual bargain through an action in tort, the tort claim is precluded as duplicative." *See Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 362 (E.D.N.Y. 2013) (citing *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012)).  Where "the only interest at stake is that of holding the defendant to a promise . . . the plaintiff may not transmogrify the contract claim into one for tort." *Avazpour*, 937 F. Supp. 2d at 362 (quoting *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980)).

Here, Temu "simply dress[es] up a breach of contract claim by further alleging that [Gluck] had no intention, at the time of the contract's making, to perform its obligations thereunder." *N. Am. Photon*, 2020 WL 3051059, at *2 (quoting *Telecom Int'l Am. Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)).  Temu's concern is it did not "obtain the benefit of [its] bargain" because Gluck allegedly misrepresented his current intentions in the contract. *Avazpour*, 937 F. Supp. 2d at 362.  This case is a private dispute between private parties over the terms and obligations of the contract.

Although there are a few circumstances in which tort and contract claims are not duplicative, Temu has not alleged any of those narrow exceptions here.  "Separate claims for

fraud and breach of contract exist only when a plaintiff can "'(i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" *N. Am. Photon*, 2020 WL 3051059, at *2 (quoting *Guilbert v. Gardner*, 480 F.3d 140, 148 (2d Cir. 2007)); *see also Aretakis v. Caesars Entertainment*, No. 16 Civ. 8751 (KPF), 2018 WL 1069450, at *11 (S.D.N.Y. Feb. 23, 2018) (dismissing claims of intentional and negligent misrepresentation as duplicative of contract claims) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). None of these circumstances apply to Temu's complaint.

First, Temu does not allege that either Gluck or Alec Monopoly owed it a duty independent of their contractual obligations. For example, neither Gluck nor Alec Monopoly have any fiduciary duty to Temu.

Second, the alleged misrepresentations here are not collateral or extraneous to the contract. To the contrary, Temu contends that Gluck's representations were made in the contract itself. Compl. ¶¶ 59, 74. And Temu asserts that Gluck's representations were material to its decision to settle with Alec Monopoly and that Temu would not have settled without those representations. Compl. ¶¶ 68, 81.

Finally, all of the damages Temu seeks in its tort claims are recoverable as contract damages. Indeed, Temu requests the same damages in its tort and contract claims. Temu seeks rescission of the contract and tort damages "including investigating Gluck's new claims, responding to Gluck, hiring outside counsel, and filing this lawsuit." Compl. ¶¶ 70-71, 82-83. Temu seeks those exact same damages in its contract claims. Compl. ¶¶ 88-89, 94.

Because Temu intentional and negligent misrepresentation claims simply repackage its breach of contract claims, the Court should dismiss them as duplicative.

      D.    <u>Temu's negligence claim is barred by the economic loss doctrine.</u>

Temu's negligence claim should be dismissed for an additional reason. Under New York law, where a plaintiff's injuries are primarily economic, "the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie." *See Aretakis*, 2018 WL 1069450, at *12 (quoting *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 505-06 (S.D.N.Y. 2013)). A defendant is not liable in tort unless there is a "special relationship that requires the defendant to protect against the risk of harm to plaintiff." *Aretakis*, 2018 WL 1069450, at *12 (quoting *Travelers Cas. & Sur. Co. v. Dormitory Auth. – State of N.Y.*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010)).

Here, Temu seeks damages that are "quintessentially economic," not "damages for injuries to [its] person or property." *See Aretakis*, 2018 WL 1069450, at *13. Temu alleges no facts suggesting that Alec Monopoly had any duty of care to Temu. Accordingly, Temu's claim lies in contract and not tort.

**III.    Temu fails to allege that Alec Monopoly breached the settlement agreement.**

Temu's contract claims against Alec Monopoly fail as a matter of law. The gravamen of Temu's breach of contract claim is that Gluck breached its obligations under Paragraphs 2.4 and 2.5 of the settlement agreement by allegedly soliciting clients to sue Temu and by allegedly representing clients who intended to sue Temu when the agreement was executed. Alec Monopoly joins in Gluck's argument that these allegations are insufficient to plausibly allege that its actions were contrary to the representations it made in the settlement agreement. And the claims against Alec Monopoly for breach of contract and breach of the covenant of good faith and fair dealing must be dismissed for an additional reason. The complaint lacks even a

conclusory allegation that Alec Monopoly breached its obligations under the settlement agreement.  Nor could Temu state a contract claim against Alec Monopoly on an agency theory.  Finally, Temu is not entitled to rescission of the settlement agreement as a matter of law.

A.    <u>Temu has not alleged the Alec Monopoly breached any of its obligations under the settlement agreement.</u>

To state a claim for breach of contract Temu must allege "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Tobin v. Gluck*, 137 F. Supp. 3d 278, 292 (E.D.N.Y. 2015) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).  Whether obligations under a multilateral contract are joint or several "is ultimately a question of the parties' intent, as revealed by the language of their contract and the subject matter to which it relates, as well as the surrounding circumstances."  *See Klauber Bros.*, 2013 WL 1245456, at *3 (quoting *NYKcool A.B. v. Pac. Fruit Inc.*, No. 10 Civ. 3867(LAK)(AJP), 2010 WL 4812975, at *12 (S.D.N.Y. Nov. 24, 2010)).  The Court "must look first to the plain language of the agreement itself" to understand the intention of the parties to a written contract.  *Klauber Bros.*, 2013 WL 1245456, at *3 (quoting *Lemus v. Manhattan Car Wash, Inc.*, No. 06 Civ. 15486(MHD), 2010 WL 1372705 at *7 & n.16 (S.D.N.Y. Mar. 26, 2010)).  The court looks to extrinsic evidence of the parties' intent only if the contract is ambiguous.  *See Klauber Bros.*, 2013 WL 1245456, at *3.

The only breach alleged in the Complaint is that "Gluck breached his obligations under Paragraphs 2.4 and 2.5 of the agreements by soliciting for clients to sue companies like Temu while the agreements were being executed and by having clients waiting in the wings to sue Temu."  Compl. ¶ 87.  Temu makes no non-conclusory allegation that Alec Monopoly breached its obligations under the contract.  Accordingly, Temu cannot state a claim for breach of contract against Alec Monopoly.

The settlement agreement unambiguously states that the representations in Paragraph 2.4 are made by Gluck.  It is Gluck that "represent[s] that they currently have no clients who intent to sue TEMU and have no present intention of advertising or marketing for additional clients." Ex. 1 ¶ 2.4.  And it is Gluck's "right to represent clients against TEMU, bring claims against TEMU, and market and advertise for additional clients" that Paragraph 2.4 confirms is not "restrict[ed], inhibit[ed], or limit[ed], in any way."  Ex. 1 ¶ 2.4.  Alec Monopoly is not even mentioned in Paragraph 2.4.  Nor could Alec Monopoly – which is not a law firm – represent clients in suits against Temu.

To be sure, Alec Monopoly did make certain representations as part of its settlement with Temu.  Alec Monopoly's representations are set out in Paragraphs 2.1-2.3.  Alec Monopoly represented that it has fully disclosed its known claims against Temu based on the sale of products that incorporate the Subject Designs and that Alec Monopoly owns the Subject Designs. Ex. 1 ¶¶ 2.1-2.2.  Alec Monopoly also acknowledged that Temu claims to be a service provider under the Digital Millenium Copyright Act.  Ex. 1 ¶ 2.3.  Temu alleges no misrepresentations in Paragraphs 2.1-2.3 and no breach of contract based on those paragraphs.

Additionally, Paragraph 2.5 imposes no obligations on Alec Monopoly to ensure the accuracy of Gluck's representations.  That paragraph states that the parties and Gluck "acknowledge that this Agreement is being entered into based on assurance of the truth and accuracy of the representations contained herein, and that any material breach of the representations made herein would grant it the ability to pursue all available remedies."  Ex. 1 ¶ 2.5.  This acknowledgement that the settlement is based on assurances of the truth of representations in Paragraphs 2.1-2.4 does not impose any requirement on Alec Monopoly to verify any representations made by Gluck.  To the contrary, Alec Monopoly is in no better

- 13 -

position than Temu to know Gluck's alleged intention to advertise or file lawsuits on behalf of other clients. *See* Compl. ¶ 81.

Gluck argues that it is not a party to the contract. But even if Gluck were a party to the agreement, Temu could not state a claim against Alec Monopoly for breach of an obligation that the contract assigns solely to Gluck. The settlement agreement "ascribe[s the] particular obligation[ ]" to make the representations in Paragraph 2.4 to Gluck, and Gluck alone. *See Tobin*, 137 F. Supp. 3d at 309. Where a multilateral contract "specifically assigns certain obligations to particular parties and expressly makes only those parties responsible for nonperformance, breach of contract claims pursuant to such provisions may only be asserted against the particular party to whom the obligation was assigned." *Id.* at 307.

*Klauber Brothers* is instructive. In that case a clothing designer settled copyright claims against an underwear manufacturer and a retail clothing store. *Klauber Bros.*, 2013 WL 1245456, at *1. The contract expressly provided that the manufacturer agreed to pay the settlement payments. *Id.* at *3. When the manufacturer went out of business the plaintiff designer sought payment from the retail store instead. *Id.* at *2-3. The court dismissed where the agreement "plainly does not impose any obligation on [the retail store] to make any payments to [plaintiff]." *Id*. at *3-4. Here too, the settlement agreement "specifically provides that only" Gluck would be responsible for the representations made in Paragraph 2.4, *id.* at *4, and Temu's claim against Alec Monopoly over an alleged breach of that provision must be dismissed.

That Alec Monopoly is a party to the contract that Temu alleges was breached is of no import. Temu "cannot assert that [Alec Monopoly] breached a contractual obligation to it" based on Gluck's alleged breach of his distinct duties. *See Arena Investors, L.P. v. DCK Worldwide Holding Inc.*, 189 N.Y.S.3d 117, 119 (2023). A breach by one party to a multilateral contract is

not attributable to other parties with distinct obligations under the agreement. Alec Monopoly's "rights and duties" under the settlement agreement are "entirely separate" from Temu's or Gluck's rights or duties. *See id.* at 118. It is Alec Monopoly that agrees to release Temu.[7] Ex. 1 ¶ 3. And Alec Monopoly makes the representations set forth in Paragraphs 2.1-2.3. Gluck, on the other hand, only executed the agreement as to Paragraphs 2.4 and 2.5. Gluck's representations in Paragraph 2.4 are wholly distinct from Alec Monopoly's representations. Alec Monopoly has indisputably performed its obligations under the contract.

    B.    <u>Temu alleges no breach of the implied covenant of good faith and fair dealing by Alec Monopoly and the Court should dismiss Count Four as duplicative.</u>

Temu's breach of the implied covenant of good faith and fair dealing fares no better. The implied covenant "prevents any party from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013) (quoting *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)). The covenant serves to "effectuate the intentions of the parties" or to "protect their reasonable expectations." *Gaia*, 720 F.3d at 93 (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1996)). To state a freestanding claim for breach of the implied covenant "a plaintiff must allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claim." *ARS Kabirwala, LP v. El Paso Kabirwala Caymon Co.*, No. 16-cv-6430-GHW, 2017 WL 3396422, at *4 (S.D.N.Y. Aug. 8, 2017) (quoting *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-cv-9116, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009)).

---

[7] The "Parties" is a defined term referring to Temu and Alec Monopoly. *See* Ex. 1 at 1.

As with the breach of contract claim, Temu does not allege that Alec Monopoly itself breached the covenant of good faith and fair dealing.  Instead, Temu complains that Gluck breached the implied covenant "[b]y soliciting for clients to sue Temu while the agreements were being executed and by having clients waiting in the wings to sue Temu."  Compl. ¶ 92.  The complaint lacks any allegation that Alec Monopoly deprived Temu of the benefits of its bargain.

That allegation is insufficient to state a claim for breach of the covenant of good faith and fair dealing against Gluck, never mind Alec Monopoly.  The conduct Temu complains of in Count Four is the exact same breach it alleges in Count Three.  *Compare* Compl. ¶ 87 *with* Compl. ¶ 92.  It is "redundant" to raise both breach of contract and breach of the implied covenant claims in the same complaint based on the same conduct.  *See ARS Kabirwala*, 2017 WL 3396422, at *4.  "[C]ourts confronted with such complaints under New York law regularly dismiss any freestanding claim for breach of the covenant of fair dealing."  *Id.*  (quoting *Jordan v. Verizon Corp.*, No. 08-cv-6414, 2008 WL 5209989, at *7 (S.D.N.Y. Dec. 10, 2008)).  The implied covenant claim is therefore duplicative of Count Three and should be dismissed.

C.     <u>Alec Monopoly is not vicariously liable for breach of the settlement agreement</u>.

Temu's vicarious liability theory does not rescue its contract claims against Alec Monopoly.  As an initial matter, Alec Monopoly is not vicariously liable for Gluck's actions, whether or not Gluck is bound by the settlement agreement.  Temu does not – and cannot – allege that Gluck acted as Alec Monopoly's agent when it allegedly advertised for other clients or threatened lawsuits on behalf of different clients.  "[A]n agent acts outside the scope of its authority if it is motivated solely by personal motives unrelated to the furtherance of the principal's business."  *In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 644 (S.D.N.Y. Mar. 28, 2018) (quoting *John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F. Supp. 2d 527, 543 (S.D.N.Y. 2001)).  Gluck was motivated by its own business interests and did

- 16 -

not further Alec Monopoly's business when it allegedly advertised for new clients or considered bringing suit against Temu on behalf of other clients.

The complaint does not allege that Gluck advertised for clients on Alec Monopoly's behalf. Nor could it; advertising for other clients was for the benefit of Gluck alone. Alec Monopoly did not stand to benefit in any way from Gluck's advertisements.

So too with respect to Gluck's representation of clients other than Alec Monopoly. Gluck's alleged plan to sue Temu on behalf of other clients was not under Alec Monopoly's control and did not inure to Alec Monopoly's benefit. Those other clients would have the sole authority to direct Gluck's actions on their behalf. Certainly, Alec Monopoly could not have authorized litigation on behalf of a third party.

Accordingly, Temu cannot state a claim sounding in contract against Alec Monopoly on a vicarious liability theory.

D.    Rescission of the settlement agreement is not an available remedy.

Even if the breach of contract claim against Gluck survives a motion to dismiss – and it should not – the Court should find that rescission is not available to Temu.

As a matter of law, rescission of a multilateral contract is not an appropriate remedy where only one party is alleged to have breached. "A breach by one of the parties to a tripartite agreement is not a basis for rescission as to the other parties." *Rubin v. Whitney*, 295 N.Y.S. 255, 267 (Sup. Ct. 1937).

And rescission is a limited remedy in equity available only when there is no adequate remedy at law. *See New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000). Here, Temu seeks damages including the costs of investigating and responding to Gluck's new claims, hiring outside counsel, and filing this case. Compl.

- 17 -

¶¶ 88, 94.  Those are damages that can be remedied with monetary compensation.  Temu has therefore not alleged that it lacks an adequate remedy at law.

Finally, rescission would be unjust under the circumstances of this case.  Temu is asking that Alec Monopoly be required to repay the settlement payment – based on the alleged actions of others – even though the consideration for that payment had nothing to do with the representations in Paragraph 2.4 that Temu contends were false.  The agreement provides that the consideration for the settlement payment is the release Alec Monopoly executed in favor of Temu.  *See* Ex. 1 ¶ 2.6.  The payment and the release are independent of any purported misrepresentation.

## IV.    Temu cannot state a claim for unjust enrichment.

Temu's unjust enrichment claim against Alec Monopoly should also be dismissed.  To state a claim for unjust enrichment, Temu must allege that "(a) the defendant was enriched; (b) the enrichment was at the plaintiff's expense; and (c) the defendant's retention of that benefit would be unjust."  *New Paradigm*, 107 F. Supp. 2d at 328-29 (quoting *Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1472 (S.D.N.Y. 1992)).  Count Five should be dismissed because it is duplicative of Temu's contract claims and because Temu has failed to allege that Alec Monopoly's retention of the settlement payment is unjust.

Temu cannot state a claim for unjust enrichment against Alec Monopoly where, as here, the parties have a binding contract.  An unjust enrichment claim is "ordinarily unavailable when a valid and enforceable contract governing the same subject matter exists."  *New Paradigm*, 107 F. Supp. at 329 (quoting *Mina Investment Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 361 (S.D.N.Y. 1998)); *see also Bancorp Servs.*, 2016 WL 4916969, at * 8 ("The existence of a valid and enforceable contract precludes recovery for unjust enrichment that is in addition to or in

conflict with the terms of the contract.").  Where there is a contract, that agreement governs the parties' reasonable expectations and Temu's remedy is limited to proving a breach of contract.

That is true whether or not Alec Monopoly is liable on Temu's breach of contract claim. The claims are duplicative because Count Five turns on the same facts as Counts Three and Four. The actions that Temu asserts were unjust is that "Gluck fraudulently misled Temu into entering the agreements and their terms based on Gluck's false representations in Paragraph 2.4 of the settlement agreements."  Compl. ¶ 100.  Gluck's purported misrepresentation is precisely what Temu contends breached the contract.  *See* Compl. ¶¶ 87, 92.  Temu alleges "no facts suggesting some other basis for injustice."  *See Del Rosario v. Sazerac Co.*, No. 23-cv-1060 (AS), 2023 WL 6318083, at *3 (S.D.N.Y. Sept. 28, 2023); *see also Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) ("[I]f plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.").

Finally, even if Temu's unjust enrichment claim is not duplicative, Temu fails to allege facts showing that Alec Monopoly's retention of the settlement payment is unjust.  The agreement makes clear that the consideration of the payment is the release.  Ex. 1 ¶ 2.6.  Temu does not allege that Alec Monopoly failed to execute the release or breached the release in any way.  That is to say, Temu got what it paid for.

## V.    Alec Monopoly is entitled to an award of attorneys' fees and costs.

The agreement provides that the prevailing party is entitled to recover its attorneys' fees in any action for breach of that agreement.  Compl. ¶ 20; Ex. 1 ¶ 19.  Alec Monopoly will be the prevailing party in an action that seeks to unwind the settlement agreement if the Court grants this motion.  Accordingly, the Court should issue an order awarding Alec Monopoly its attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, Defendants Alec Monopoly, LLP and Alec Monopoly Art, LLC respectfully request that the Court dismiss Plaintiff Whaleco Inc.'s complaint with prejudice and issue an order awarding Alec Monopoly, LLP and Alec Monopoly Art, LLC their attorneys' fees and costs.


Dated:  June 26, 2025                              Respectfully submitted,

                                                   ALEC MONOPOLY ART, LLC and
                                                   ALEC MONOPOLY, LLC


                                                   By their attorney

                                                   */s/ Megan A. Siddall*
                                                   Megan A. Siddall (BBO No. 568979)
                                                   Miner Siddall LLP
                                                   101 Federal Street
                                                   Boston, MA 02110
                                                   Tel. (617) 202-5890
                                                   msiddall@msdefenders.com

- 20 -

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served by ECF on counsel for all parties on June 26, 2025.


/s/ Megan A. Siddall
Megan A. Siddall